James Dean VAN CLEAVE v. STATE of Arkansas

CR 79-32                       598 S.W. 2d 65

Supreme Court of Arkansas
Opinion delivered Arpil 28, 1980
Rehearing denied June 2, 1980

*Michael Dabney,* Public Defender, for appellant.

*Steve Clark,* Atty. Gen., by: *Dennis R. Molock,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. Appellant, James Dean Van Cleave, was convicted of capital murder and sentenced to life without parole. He urges seven grounds for reversal that will be set out in order in this opinion.

Debra King was murdered on January 29, 1978, during the course of a robbery. Her death was caused by multiple stab wounds to the chest. During the trial, evidence and testimony were presented which appellant claims were prejudicial. We do not find any of the alleged errors to have been

prejudicial for reasons which will be discussed under each ground argued for reversal.

## I.

## THE TRIAL COURT CLEARLY ABUSED HIS DISCRETION BY UNDULY RESTRICTING VOIR DIRE EXAMINATION OF JURORS BY DEFENSE COUNSEL.

During the voir dire examination of the petit jurors, defense counsel and the court repeatedly exchanged heated remarks which caused the defense counsel to feel the court was preventing proper voir dire examination. In effect, they argue they were forced to accept a jury in violation of the Witherspoon rule. The extent of the voir dire examination by either counsel is a matter which generally rests within the sound judicial discretion of the trial court, and we will not reverse such discretionary rulings unless it appears there was a clear abuse of discretion. *Fauna* v. *State,* 265 Ark. 934, 582 S.W. 2d 18 (1979).

Arkansas Rules of Criminal Procedure, Rule 32.2 (Repl. 1977), states as follows:

> (a) voir dire examination shall be conducted for the purpose of discovering bases for challenge for cause and for the purpose of gaining knowledge to enable the parties to intelligently exercise peremptory challenges. . . .

> (b) . . . The judge shall also permit such additional questions by the defendant or his attorney and the prosecuting attorney as the judge deems reasonable and proper.

Therefore, unless we determine that the trial court abused his discretion in limiting the voir dire examination, we must affirm.

Even before the trial started, this case was fought vigorously on behalf of the appellant. There certainly was no cessation of defense efforts during the voir dire examination.

In almost every instance while a juror was being examined, the court interrupted the defense counsel by stating that the court would declare the law and then proceed to ask the prospective jurors if they would follow the court's reasoning. Although this temporarily interrupted defense counsel, it did not prevent them from coming through the side door or back door and eventually gaining all the information they sought. It appears that both the court and defense counsel were too aggressive in this matter; but, after careful examination of every one of the objections and interruptions, we conclude that the purposes of voir dire on behalf of the defense were effectively carried out by able counsel.

Defense counsel seemed to think they were entitled to use the voir dire for the purpose of getting acquainted with the jurors. They may well get to know a lot about a juror, but they are not free to go in any and all directions for as long as they desire. Even though the trial court attempted to stop voir dire on a number of prospective jurors, they were all questioned rather thoroughly. The alleged errors by the court in curtailing the examination were almost identical with those in *Fauna,* supra, where we reversed for abuse of discretion. However, in the present case, as previously stated, defense counsel still managed to obtain enough information to make an intelligent decision whether or not to use a peremptory challenge.

The fact that the jurors responded to the court that they would follow the law as given by the court was not sufficient to enable the defense counsel to make a proper determination of whether he should exercise a peremptory challenge as to that juror. Counsel should be allowed leeway to develop the prospective jurors' attitude toward a particular defense.

In the present case the defense was that of not guilty. The questions and interruptions primarily concerned matters which are customarily given by way of instruction at the close of the case. Had the defense been one of insanity, self-defense, or other specific defenses, the latitude granted the appellant in the voir dire examination would have been greater.

Under the particular facts of this case and the defense of

not guilty, we do not believe that we can say the court clearly abused its discretion even though the interruptions were more frequent than appeared necessary.

## II.

THE TRIAL COURT ABUSED ITS DISCRETION IN THE UNDUE ADMONISHMENT OF COUNSEL IN SUCH A WAY AS TO SUBJECT COUNSEL TO CONTEMPT AND RIDICULE BEFORE THE PROSPECTIVE JUROR WHO WAS BEING QUESTIONED AT THE TIME.

Mr. Pete Estes, Sr. entered the courtroom during the examination of prospective juror Mary Sue Jones. He conferred briefly with Robert R. Estes, one of the active defense attorneys. Mr. Estes, Sr., a member of the firm of Estes, Estes & Estes, talked with Robert Estes about a personal matter. The court instructed Mr. Estes to get a coat and tie on and sit down if he was going to participate in the case. The exchange between Mr. Estes, Sr. and the court was in the presence of only this prospective juror.

We stated in *McAlister* v. *State,* 206 Ark. 998, 178 S.W. 2d 67 (1944), and quoted with approval in *Chapman and Pearson* v. *State,* 257 Ark. 415, 516 S.W. 2d 598 (1974):

No principle is better settled than that a judge presiding at a trial should manifest the most impartial fairness in the conduct of the case. Because of his great influence with the jury, he should refrain from impatient remarks or unnecessary comments which may tend to result prejudicially to a litigant or which tend to influence the minds of the jurors.

Where the trial court's remarks may be construed as reflecting upon counsel's knowledge and skill as a lawyer, the rights of an accused are prejudiced and reversal is necessary. *McAlister,* supra.

We feel it would have been a better practice for the court to have asked Mr. Estes, Sr. to approach the bench and dis-

cuss this matter out of the hearing of the prospective juror. But, considering the fact that this juror was excused and did not participate in the case, we do not feel the error was prejudicial.

## III.

## THE TRIAL COURT ERRED IN REFUSING DEFENDANT ATTORNEY OPPORTUNITY FOR REHABILITATION OF VENIREMEN WHO EXPRESSED SCRUPLES AGAINST IMPOSITION OF THE DEATH PENALTY.

The point argued for reversal here concerns the rehabilitation of veniremen who have expressed scruples against the death penalty. The landmark case is, of course, *Witherspoon* v. *Illinois,* 391 U.S. 510 (1968). We believe the Witherspoon rule is confined to cases involving a conviction which carries the death penalty. We recognize appellant's argument that the underlying principle in such matters is the conviction rather than the sentence.

Almost 500 pages of the transcript in this case involved the examination of the 39 prospective jurors. In some instances it appears the court did improperly attempt to limit the questioning by the defense counsel of matters concerning the attitude of the prospective jurors relating to the death penalty. However, the attorneys for the appellant persisted and rather effectively examined each juror to the extent required by *Witherspoon,* supra.

We adhere to the holding in *Witherspoon,* supra, that only the most extreme and compelling prejudice against the death penalty, perhaps only or very nearly a resolve to vote against it blindly and in all circumstances, is cause to exclude a juror. The mere disbelief in the death penalty, or conscientious or religious scruples with its infliction, will not automatically disqualify a juror from serving on a particular case. Only in cases where a juror expresses an unwillingness to consider the death penalty under any circumstances will that juror be excused for cause. We think that the *Witherspoon* decision does

not affect the validity of any sentence other than death, nor does it render invalid a conviction as opposed to the sentence.

We held in the case of *Tanner* v. *State,* 259 Ark. 243, 532 S.W. 2d 168 (1976), that objections to questions pertaining to the death penalty on voir dire of prospective jurors in relation to excusal because of their convictions against the death penalty are mooted when the verdict is guilty and the sentence is life without parole.

It is our opinion that the sentence of life without parole renders the holding in *Witherspoon,* supra, inapplicable to the present case; therefore, any errors of limitation committed by the court in the voir dire stage of the trial are not prejudicial.

## IV.

THE TRIAL COURT ERRED IN ALLOWING OFFI-CER J. D. SNOW TO TESTIFY IN DETAIL ABOUT THE SUBSTANCE OF AN ANONYMOUS TELE-PHONE CALL HE RECEIVED CONCERNING THE MURDER.

Officer J. D. Snow was allowed to testify in detail about an anonymous telephone call he received concerning this murder. We think it was improper to allow the officer to testify as to the details of what the anonymous caller told him relating to the manner in which the crime was committed. It was proper to allow Officer Snow to relate the portions of the telephone call which caused him to take the course of action which he subsequently took. He should not have been allow-ed to give a verbatim account of the entire telephone conver-sation.

This case is most unusual because after the improper evidence was allowed, the anonymous telephone caller took the stand as a witness and was vigorously and extensively cross-examined about the matters which had been stated previously by Officer Snow. Under these circumstances, we feel the original prejudicial error in allowing the hearsay testimony was cured by the subsequent production of the witness for cross-examination. It is true that the anonymous

caller was not originally identified to Officer Snow as Tommy Robbins. However, the record unmistakably shows that Tommy Robbins was the anonymous caller.

The court would have been bound to give an instruction to the effect that the testimony by Officer Snow concerning the anonymous telephone call could be considered only for the purpose of proving that the call had been made. But, no such request was made by defense counsel.

Our holding in *Trotter* v. *State,* 215 Ark. 121, 219 S.W. 2d 636 (1949), allows an officer to testify why he went to a certain place and looked for certain evidence or why he took a particular action. We do not think the rules of criminal procedure have changed this ruling. As stated earlier, we think that Rule 801 of the Uniform Rules of Evidence would have properly excluded this evidence, and it should have been excluded. Nevertheless, the subsequent testimony of the witness giving the identical facts was sufficient to overcome the prejudicial error considering the fact that he was most thoroughly cross-examined by defense counsel.

## V.

REFERENCE BY PROSECUTOR IN BEHALF OF STATE OF ARKANSAS IN HIS FINAL CLOSING ARGUMENTS THAT, "IF THEY, (THE DEFENDANT), WANTED TO DISPUTE ALL OF THIS, THEY HAVE EXPERTS. THEY COULD EXAMINE IT," WAS AN IMPROPER COMMENT ON THE DEFENDANT'S FAILURE TO TESITFY, INFRINGING ON THE APPELLANT'S RIGHTS UNDER THE FIFTH AMENDMENT.

During the closing argument the prosecuting attorney stated:

> Ladies and gentlemen, you have heard testimony here in this court by these witnesses that counsel for defense have had this stuff, (defendant's clothing worn on the night in question), since the 27th day of June. If they

wanted to dispute all of this, they have experts. They could examine it.

Nobody disputes the absolute right of the accused to remain silent or denies that it is reversible error for the prosecuting attorney to make any reference to the jury concerning the failure of the accused to testify. Therefore, the question here is whether the remarks above amounted to a comment on the failure of the appellant to take the stand.

Appellant cites the case of *Adams* v. *State,* 263 Ark. 536, 566 S.W. 2d 387 (1978), as authority for reversal in this matter. In the *Adams* case the prosecuting attorney stated:

> . . . How many witnesses did the defense put on for your consideration?

We think there is a great difference in the statement made by the prosecuting attorney in the *Adams* case and the statement made in the case before us. It does not appear that the statement objected to in the present case related in any manner to the failure of the accused to take the stand. There was no reference to witnesses at all in the statement made by the prosecuting attorney.

However, much of the testimony concerned the clothing worn on the night in question. The state had produced witnesses, and the defense had vigorously cross-examined them. The matter was properly before the jury.

We still adhere to the theory set forth in *Evans and Foust* v. *State,* 221 Ark. 793, 255 S.W. 2d 967 (1953), wherein we stated:

> The prosecuting attorney should carefully refrain from using any words or gestures which would be calculated to call the jury's attention to the fact that a defendant has not testified.

But, in the present case, we do not feel that the prosecutor's statement went so far as to indicate to the jury that appellant had not taken the stand.

## VI.

REFERENCE BY THE PROSECUTING ATTORNEY IN BEHALF OF THE STATE OF ARKANSAS IN ITS CLOSING STATEMENT TO TESTIMONY THAT TOMMY ROBBINS, THE ONLY EYEWITNESS TO THE ALLEGED MURDER,"EVEN SUBMITTED" TO A POLYGRAPH TEST WAS REVERSIBLE ERROR AND THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL.

During the closing argument the prosecuting attorney made the following statement:

> Whatever Tom Robbins is . . . you have got to credit him with one thing . . . to want to get the thing cleared up and bring it to light. *** Tommy Robbins volunteered this information because it got to him; it broke him down . . . he came in and did it . . . he even submitted to a polygraph test; he told you that. Now here is a man that is willing to go all the way and tell it all. ***

All parties agreed that the settled rule in Arkansas is that the results of polygraph tests are not admissible in criminal cases in the absence of mutual agreement. *Gardner* v. *State,* 263 Ark. 739 at 756, 569 S.W. 2d 74 (1978). Although we have not had previous occasion to determine whether a reference to a polygraph test is permissible, we note the case of *Johnson* v. *Florida,* 166 So. 2d 798 (1964), that neither the results of a polygraph examination nor any allusion to such examination are proper subjects of comment. This is understandable because, whether it was the state or the defense that made the reference to the person taking the test, it would be an obvious attempt to put before the jury the fact that he had taken the test and failed or passed.

We agree that any reference to a polygraph test, in the absence of an agreement or other justifiable circumstances, would ordinarily constitute prejudicial error. However, in the present case the polygraph test was first mentioned by witness Tommy Robbins while he was being questioned by

the state; and, no objection by the defense was made at that time. Later, on cross-examination in an unresponsive answer, the witness again made reference to taking the polygraph test; and, no objection was voiced at this time. When the prosecutor mentioned the polygraph test in his closing argument, the appellant's counsel immediately moved for a mistrial. The court overruled the motion for a mistrial, and nothing further was said about the matter.

In view of the fact that the appellant had not objected at the time the reference to the polygraph was made on two previous occasions, we feel that a mistrial was not justified when the prosecutor made reference to it in the closing argument. There was no request by the appellant for an admonition to the jury following the refusal of the court to grant a mistrial.

We have stated many times previously that a mistrial is an extreme remedy which is appropriate only if justice cannot be achieved by continuation of the trial. *Foots* v. *State,* 258 Ark. 507, 528 S.W. 2d 135 (1975).

We are aware of the fundamental rule that the state must adhere strictly to the questions in issue during the closing argument. The questions in issue would include all reasonable inferences and deductions therefrom. *Williams* v. *State,* 259 Ark. 667, 535 S.W. 2d 842 (1976).

Ordinarily, neither the defense nor the state may mention a polygraph test. However, considering the fact that the polygraph was mentioned twice without objection prior to the closing argument, we do not think it was prejudicial error for the prosecuting attorney to mention it.

## VII.

REFERENCE IN BEHALF OF THE STATE OF ARKANSAS BY THE PROSECUTING ATTORNEY IN HIS CLOSING ARGUMENT THAT THE DEFENDANT NEVER GAVE THE VICTIM AN OPPORTUNITY FOR A COURTROOM TRIAL BEFORE HE KILLED HER WAS EXTREMELY PREJUDICIAL,

EMOTIONAL, AND INFLAMMATORY, AND CONSTITUTES REVERSIBLE ERROR.

The final argument presented by the appellant is the prosecuting attorney made an improper closing argument inasmuch as he stated that the appellant never gave the victim an opportunity for a courtroom trial before he killed her. It is argued that the statement was extremely prejudicial, emotional, and inflammatory; and, it amounted to prejudicial error. The exact words of the prosecutor were:

> . . . He's had an opportunity to appear in this courtroom. He has had an opportunity to be tried in a court of law. James Dean, (the defendant), never gave Debbie King that opportunity when he cut the life out of her in the store that night. That is something I want you to bear with and keep in mind as we go on through with the trial of this case.

There is little doubt such statements certainly do have a tendency to arouse the emotions in jurors' minds. A statement that he repeatedly stabbed her through the heart with a knife as she cried for help would have aroused the same type of feelings among the jurors. However, the latter statement is true; and, it would have been proper for the state to make such statement. It is equally true that she did not have an opportunity to appear. We find no prejudice in the argument. In any event, the objection was not timely made. *Jones* v. *State,* 248 Ark. 694, 453 S.W. 2d 403 (1970); *O'Neal* v. *State,* 253 Ark. 574, 487 S.W. 2d 618 (1972).

Pursuant to Ark. Stat. Ann. § 43-2725 (Repl. 1977), Rule 36.4 of the Arkansas Rules of Criminal Procedure, and Rule 11(f) of the Rules of the Supreme Court, we do not find any objections made by the defense which were overruled to have constituted prejudicial error.

Affirmed.

HICKMAN, J., concurs in the result.