Jerry ROLESON and Cecilia ROLESON
*v.* STATE of Arkansas

CR 80-214                                    614 S.W. 2d 656

Supreme Court of Arkansas
Opinion delivered April 27, 1981

*Robert E. Young*, for appellant Cecilia Roleson.

*Penix, Penix & Mixon*, for appellant Jerry Roleson.

*Steve Clark*, Atty. Gen., by: *C. R. McNair, III*, Asst. Atty. Gen., for appellee.

RICHARD B. ADKISSON, Chief Justice. Appellants, Jerry Roleson and Cecilia Roleson, were convicted of the first degree murder of Carl Lipe and were sentenced to life imprisonment. After a joint trial, each has appealed.

I

Jerry Roleson correctly argues that there is insufficient evidence to support his conviction since there was no evidence corroborating the testimony of Rosa Lipe who was an accomplice as a matter of law. Ark. Stat. Ann. § 43-2116 (Repl. 1977) provides:

A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corrobo-

rated by other evidence tending to connect the defend-
ant with the commission of the offense; and the corrob-
oration is not sufficient if it merely shows that the
offense was committed, and the circumstances thereof.
. . .

Ark. Stat. Ann. § 41-303 (1) (Repl. 1977) defines an
accomplice in terms of purposeful conduct calculated to
promote or facilitate the commission of a crime:

(1) A person is an accomplice of another person in
the commission of an offense if, with the purpose of
promoting or facilitating the commission of an of-
fense, he:

(a) solicits, advises, encourages, or coerces the
other person to commit it; or

(b) aids, agrees to aid, or attempts to aid the other
person in planning or committing it; or

(c) having a legal duty to prevent the commission
of the offense, fails to make proper effort to do so.

Rosa Lipe was the wife of the deceased, Carl Lipe, and
was the key witness for the State. Rosa testified that she
began working in the Rolesons' store in February of 1979;
that two or three months before her husband's death, the
Rolesons suggested that she participate in a prostitution
business to help relieve their financial difficulties, but she
told them that she and Carl objected to her becoming a
prostitute; whereupon, they said they would get rid of Carl
since he was in the way. Subsequently, there were three
attempts made by Cecilia Roleson to kill Carl beginning two
weeks before his death. Rosa participated in the third
attempt.

One week before Carl's death he changed his life insur-
ance from $5,000 to $16,500. Rosa informed the Rolesons of
this change and was supposed to pay $5,000 of the insurance
proceeds to the Rolesons. Although Rosa was told the day of
the murder that the Rolesons were coming over and "to-

night is the night," she left her husband alone with Jerry Roleson while Rosa, Cecilia, and the children drove around town and sat in front of a furniture store. Later that night, after the children were in bed, she and Cecilia picked up Jerry on Lafe Highway and listened to his description of how he had shot Carl. Rosa accompanied Jerry and Cecilia to dispose of the gun, gloves, and tennis shoes Jerry had used during the murder. Then, after taking Jerry home to wash his clothes, Cecilia and Rosa disposed of the shells. Afterward, Rosa, as instructed by Cecilia, sat up all night pretending to wait for Carl to come home, and the next morning she reported Carl missing to the Marmaduke City Marshal, indicating she had no idea where her husband was.

Rosa Lipe's conduct reveals that she was an accomplice as a matter of law unless, as argued by the State, her accomplice status was vitiated by the duress allegedly imposed upon her by the Rolesons' threat to dispose of her son if she did not participate in the murder. However, Rosa Lipe's claim of duress is destroyed by her own testimony that her 12-year-old boy was safely in Missouri with his father at the time of the murder, and that she failed to warn the father by telephone or otherwise of any danger to the child.

The affirmative defense of duress is set out in Ark. Stat. Ann. § 41-208 (1) (Repl. 1977) which provides:

> (1) It is an affirmative defense to a prosecution that the actor engaged in the conduct charged to constitute an offense because he reasonably believed he was compelled to do so by the threat or use of unlawful force against his person or the person of another that a person of ordinary firmness in the actor's situation would not have resisted.

And, as stated in *Froman* v. *State*, 232 Ark. 697, 339 S.W. 2d 601 (1960), one raising duress as an affirmative defense is not relieved from criminality as an accomplice on account of fear excited by threat unless the danger be present or immediate.

It conclusively appears from Rosa Lipe's own testi-

mony that her fears for the life of her minor son were not justified in terms of the immediacy of the danger. Although the question of whether a witness is an accomplice is usually a mixed question of law and fact, here, the evidence conclusively shows that the witness was an accomplice. *Wilson* v. *State*, 261 Ark. 820, 552 S.W. 2d 223 (1977); *Burke* v. *State*, 242 Ark. 368, 413 S.W. 2d 646 (1967).

For the reasons stated we find there was insufficient evidence upon which to base a conviction against Jerry Roleson and his motion for a directed verdict should have been granted. The judgment as to appellant, Jerry Roleson, is reversed and the case dismissed. Once it has been determined that a conviction was based upon insufficient evidence, the Double Jeopardy Clause of the United States Constitution precludes a second trial. *Burks* v. *U.S.*, 437 U.S. 1 (1978); *Greene* v. *Massey*, 437 U.S. 19 (1978); *Pollard* v. *State*, 264 Ark. 753, 574 S.W. 2d 656 (1978).

## II

The trial court did not err in denying Cecilia Roleson's motion to dismiss for failure to try her within three terms of court as required by Rule 28.1 (b), Ark. Rules Crim. Proc., Ark. Stat. Ann., Vol. 4A (Repl. 1977). The parties agree that appellant was tried in the fourth term of the Greene County Circuit Court following her arrest; however, they disagree over the State's contention that the third term was an excludable period under Rule 28.3(d)(i) which provides:

(d) The period of delay resulting from a continuance granted at the request of the prosecuting attorney, if:

(i) the continuance is granted because of the unavailability of evidence material to the state's case, when due diligence has been exercised to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date; ...

In its order dated November 19, 1979, the trial court found certain State witnesses were unavailable for the third

term of court because of previous court commitments. The court then reset the trial for the fourth term of court, thereby making the third term an excludable period under Rule 28.3(d)(i). The trial judge's findings will not be overturned except for abuse of discretion. *Randall* v. *State*, 249 Ark. 258, 458 S.W. 2d 743 (1970); *State* v. *Lewis*, 268 Ark. 359 (1980). We find no abuse of discretion under these circumstances.

Cecilia Roleson correctly argues that the trial court erred in allowing Eric Kryton to testify, over her objection, that he received a telephone call from a man who identified himself as Jerry, the employer of Rosa Lipe. The caller wanted to know the amount of the proceeds of the insurance policy on the life of Carl Lipe, whether there was a double indemnity clause, and how the proceeds of the policy would be delivered. Mr. Kryton opined the caller on both of these occasions was Jerry Roleson, although he had never met or talked to Jerry Roleson, and did not know what his voice sounded like.

Rule 901(a)(b)(5), Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979) provides:

(a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

. . .

(5) Voice Identification. Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

This illustration is in line with our holding in *Bailey* v. *State*, 227 Ark. 889, 302 S.W. 2d 796 (1957) in which we said:

> Generally, in order to introduce evidence of a telephone conversation or communication, otherwise unobjectionable, the identity of the person, who is claimed to have talked over the telephone, must first be satisfactorily established by the party seeking the introduction of the telephone conversation. To hold one responsible for statements and answers made over the telephone by unidentified persons would open the door for fraud and imposition.

In the case at bar there was no basis for Eric Kryton to identify Jerry Rolleson as the individual calling him. Further, there was no reliable circumstantial evidence as to his identity. Although it is possible that Eric Kryton was able to identify the caller based on hearing his voice at the trial, the record does not so reflect. Since no foundation was laid for the admission of this evidence, a reversal is required on this point.

The trial court erred in allowing a jury selection procedure which did not follow Ark. Stat. Ann. § 43-1903 (Repl. 1977) and did not conform to our holding in *Clark* v. *State*, 258 Ark. 490, 527 S.W. 2d 619 (1975). In *Clark* we held a jury selection procedure to be unfair where the State and the defendant were allowed to *voir dire* all jurors before allowing either party to exercise its peremptory challenges:

> [I]t was an advantage to the State to be able to examine all of the next nine jurors before exercising its last two challenges — i.e., it could peremptorily challenge the least desirable of the nine jurors instead of rejecting them one at a time [as required by § 43-1903].

Here, the disadvantage to the appellant is clearer because *only* the State was permitted to *voir dire* all of the remaining jurors before either party was allowed to exercise peremptory challenges. Appellant, Cecilia Roleson, filed a timely motion requesting the individual *voir dire* of jurors as

required by Ark. Stat. Ann. § 43-1903, and the trial court erroneously denied the motion.

The court erred in failing to grant a mistrial because of a reference by Rosa Lipe to having taken a polygraph test. On cross-examination of Rosa Lipe, Cecilia Roleson's attorney questioned Rosa concerning a prior inconsistent statement that life insurance was not a motive for the murder. Rosa replied that that statement was untrue and was made before she "took the polygraph test," thereby implying that everything she said afterward and at trial on behalf of the State was true. The defense attorney for Cecilia Roleson moved for a mistrial; the court denied the motion and told the jury to disregard the statement as having nothing to do with the lawsuit. Later on cross-examination, when questioned about the truthfulness of prior statements, Rosa Lipe made references such as "I can't answer the questions without doing something the judge asked me not to do," and "I can't explain it because the judge won't let me." Cecilia Roleson's counsel then renewed his mistrial motion.

This situation is aggravated by the fact that defense counsel tried to approach the bench to prevent any reference to the polygraph examination, but the court refused to hear the objection and the testimony came in immediately afterward.

Cecilia's counsel properly cites *Gardner* v. *State*, 263 Ark. 739, 569 S.W. 2d 74 (1978) for the rule that the results of polygraph tests are inadmissible in criminal cases. And it is recognized that any reference to a polygraph test in the absence of agreement or other justifiable circumstances would constitute error. *Van Cleave* v. *State*, 268 Ark. 514 (1980).

Other errors argued for reversal by Cecilia Roleson are not likely to arise in the same context on retrial and, therefore, are not addressed in this opinion.

For the reasons stated the judgment against Cecilia Roleson is reversed and the case remanded.

HOLT, J., not participating.