Jerry Lee WINGFIELD *v.* STATE of Arkansas

CR 90-70                                      796 S.W.2d 574

Supreme Court of Arkansas
Opinion delivered October 8, 1990

*James R. Marschewski*, for appellant.

*Steve Clark*, Att'y Gen., by: *Sandra Bailey Moll*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. On July 19, 1989, the appellant, Jerry Wingfield, was convicted of murder in the first degree and felon in possession of a firearm and sentenced, respectively, to concurrent terms of life and six years in the Arkansas Department of Correction.

Wingfield alleges two points of error on appeal: 1) the trial court erred in failing to grant his motion for mistrial, and 2) the trial court erred in refusing to suppress letters written by him while he was incarcerated. We agree that the trial court erred in failing to grant Wingfield's motion for mistrial and reverse and

remand.

Wingfield initially asserts that the trial court erred in failing to grant his motion for mistrial after a witness referred to a polygraph examination. Upon direct examination of Detective Sergeant J.C. Rider, Fort Smith Police Department, by Wingfield's attorney, the following exchange occurred:

\* \* \* \*

Q  Okay. Do you remember Frankie [Frank Boyles, Wingfield's nephew] denying to you that he was involved in the burglary of the house in Oklahoma, where the murder weapon came from?

A  He denied that, to start with, when we first spoke with him in the Oklahoma County jail.

Q  Okay. Officer, I'm talking about the April the thirteenth statement. That's the last reported statement that I have—

A  Okay.

Q  — — On the one, two, three, four, five, sixth page. You asked him did you not: Okay, did you help him [the defendant] on that, referring to the Mason burglary, because he told you that Jerry burglarized the whole house, didn't he?

A  Yes, sir. But, to start with, he had denied even being there.

Q  Yes, sir. He denied being there. He denied, first of all, knowing anything about it, denied knowing where the gun came from isn't that right?

A  To start with.

Q  Yeah.

A  Yes, sir.

Q  And I'm talking about April the thirteenth, you're sitting down — I mean, he's still in Oklahoma and you went to talk to him. And on this page, he had still told you that Jerry was the [one] who broke in and got everything?

A   Yes, sir. And I have to admit that's probably a mistake on my part for letting that pass, as I did, because earlier in the day, myself and Sergeant Boyd had interviewed him in the jail before taking him to OSBI headquarters for a polygraph. He had —

MR. MARSCHEWSKI:   Your Honor, can we approach the bench.

(AT BARSIDE, OUT OF JURY'S HEARING:)

MR. MARSCHEWSKI:   I'm going to make a motion for a mistrial at this time. The officer has referred and implied that they took Frankie Boyles to the OSBI headquarters for a polygraph examination. Judge, I think that that is inadmissible. He doesn't have to say what it's about. That is an indication that a jury cannot escape that presumption. That's why the police believe him, is that somehow that's related to a polygraph examination. I move for a mistrial and ask that the Court grant it.

THE COURT:   It will be denied.

MR. MARSCHEWSKI:   Well, Your Honor, then I would like to know if I can go to the issue of the polygraph examination.

THE COURT:   It's up to you.

MR. MARSCHEWSKI:   He flunked the polygraph examination, is my understanding, although the OSBI has not provided me that information. I would like to have a recess and ask the State to bring down the polygraph examiner, here, to testify today. And they told me that they would have him here.

MR. BELAND [Prosecuting Attorney]:   No, Mr. Marschewski. I didn't tell you, I said I'd try to get in touch with him. Your Honor, the man's name is Gary Rogers. He's stationed out of Ada, I've not been able to make contact with him. Mr. Marschewski mentioned nothing about him till —

THE COURT:   The statement of this officer, so far,

has just been he took him to one. I don't think we're getting into that, yet; if you want to go into it, you can do it, but I'm not going to recess for anything, Mr. Marschewski. I don't think it's got a thing in the world to do with this case.

MR. MARSCHEWSKI: Yes, Your Honor, because it's my understanding in taking the polygraph, that they asked him about the murder incident and he flunked it. You know, the officer's implied to the jury that he has taken him down to the polygraph examination and now

—

THE COURT: I don't care whether he did or not. In my opinion, it's not relevant evidence and shouldn't be inquired into. If you want to and the State doesn't object to it, I'll let you go into all of it, you want to but I'm not going to recess and get anybody here.

(BARSIDE CONFERENCE CONCLUDED)

*CONTINUED DIRECT EXAMINATION*

\*     \*     \*     \*

Q   You know, he's — you know, talking about being able to get them guns and stuff and saying that he might be able to get some guns and stuff like that. Then he came back and told me how'd he'd gotten those guns and then he got into all that stuff, so, then he was always talkin' about going to Cushing, over to Pat's. Now, is that right?

A   Well, that's what he told me at the time, sir, but it's like I told you I made a mistake probably in letting that slide, letting that statement slide and pursuing it any further.

Q   You mean not confronting him and telling him that he's lying to you right then?

A   Yes, sir, I let that slide. But he had told me the truth earlier in the day before he ever took the polygraph test about the burglary.

Q   You mean he took a polygraph test about the burglary?

A No. He took a polygraph test concerning the homicide.

MR. MARSCHEWSKI: Your Honor —

THE COURT: Mr. Marschewski, you're asking him about these things.

MR. MARSCHEWSKI: I didn't ask him about that, Your Honor.

THE COURT: You should have guided him more in his testimony, Mr. Marschewski. Ladies and Gentlemen, whether or not this man took a polygraph test, what its results were is not admissible into evidence. It doesn't have anything to do with this trial. You're the searchers of the truth, here, and what you find to be the truth is what it's going to be.

\* \* \* \*

■ Arkansas law prohibits the admission of polygraph test results, except upon a written stipulation of the parties. *See* Ark. Code Ann. § 12-12-704 (1987); *Hayes v. State*, 298 Ark. 356, 767 S.W.2d 525 (1989) (citing *Foster v. State*, 285 Ark. 363, 687 S.W.2d 829 (1985), *cert. denied*, 482 U.S. 929 (1987)). Relying on *Johnson v. Florida*, 166 So. 2d 798 (Fla. 1964), we have also held that *any* reference to a polygraph test, in the absence of an agreement or other justifiable circumstances, ordinarily constitutes prejudicial error. (Emphasis added.) *See Roleson v. State*, 272 Ark. 346, 614 S.W.2d 656 (1981) (citing *Van Cleave v. State*, 268 Ark. 514, 598 S.W.2d 65 (1980)).

■ We conclude now, however, that our holdings in *Roleson v. State, supra*, and *Van Cleave v. State, supra*, were overbroad and take this opportunity to clarify our position on references to polygraph examinations. While neither the results of a lie detector examination nor testimony that indirectly or inferentially apprises a jury of the results of a lie detector examination are admissible, the fact that the jury is apprised that a lie detector test was taken is not necessarily prejudicial *if* no inference as to the result is raised or *if* any inferences might be raised as to the result are not prejudicial. *See Johnson v. Florida, supra*.

■ Consequently, a witness's veracity can not be bolstered

or discredited by proof of his taking or refusing a lie detector test, and evidence of a witness's willingness or reluctance to be examined is also prejudicial and inadmissible to prove consciousness of innocence or of guilt. *Id..*

It is axiomatic that a mistrial is an extreme and drastic remedy that should only be resorted to when there has been an error so prejudicial that justice could not be served by continuing the trial. The sound discretion of the trial court should not be disturbed unless abuse of that discretion is shown. *Brewer* v. *State*, 269 Ark. 185, 599 S.W.2d 141 (1980).

Here, there was no agreement between the parties as to the mention of the polygraph tests or their results, nor were there circumstances which justified a reference to polygraph tests. Further, the two references to a polygraph test, under the facts of this case, make obvious Officer Rider's attempt to bolster the veracity and credibility of Frank Boyles's testimony and thereby constitutes prejudicial error. *See also Foster* v. *State, supra.* The State's argument that Wingfield invited the introduction of the error by eliciting Officer Rider's mention of the polygraph test is without merit. To the contrary, a review of the verbatim testimony between Wingfield's counsel and Officer Rider reveals that the references to a polygraph test were not responsive to the questions asked.

Wingfield made a timely objection to Officer Rider's first mention of a polygraph test in connection with Frank Boyles. The trial court's allowance of additional references to polygraph tests compounded its error, and the trial court's admonition to the jury as to the inadmissibility into evidence of whether Frank Boyles had taken a polygraph test, or what the results of that test might have been, did not cure the resulting prejudice suffered by Wingfield. *See Roleson* v. *State, supra.* Consequently, the trial court abused its discretion in denying Wingfield's motion for a mistrial.

Accordingly, we need not address Wingfield's second point of error, and we reverse and remand.

HAYS, GLAZE AND TURNER, dissent.

STEELE HAYS, Justice, dissenting. The majority concludes in effect that the mere mention of the word polygraph is so drastic

that the trial judge's firm instruction to the jury[1] to disregard it could not remedy the incident and it was manifestly unjust for the trial to continue. Those are the words used by this court in countless cases dealing with mistrial motions because of some unpropitious occurrence during the trial. *Johnson* v. *State*, 254 Ark. 293, 493 S.W.2d 115 (1973), is typical. Moreover, the majority declares that the trial judge here abused his broad discretion by failing to recognize the egregious development and continuing the trial.

I respectfully disagree for a number of reasons: it was not the state that elicited the mention of polygraph; by all indications the mention was inadvertent; it was not the defendant but a witness who had taken a polygraph; most importantly, the jurors were not told the results of the polygraph.

In *Scott* v. *State*, 263 Ark. 669, 566 S.W.2d 737 (1978), defense counsel mentioned polygraph in his opening statement, prompting the prosecutor to try to introduce the results of the polygraph which brought on a mistrial motion. Because *the results were never before the jury*, we affirmed the denial of a mistrial. In *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980), a rape victim referred to a polygraph test administered to her, yet we found no abuse of discretion in the denial of a mistrial because the trial judge promptly admonished the jury to disregard the remark. The identical factors in this case favor affirmance. Noting that results of polygraphs are not ordinarily admissible, the author of *Wicks*, Justice George Rose Smith, wrote, "It does not follow that every reference to such a test calls for a mistrial, anymore than that is so when the court instructs the jury to disregard a statement based on hearsay." *Id.*, p. 784.

The trial judge witnessed this incident as it occurred and was better able to determine its cause and effect. I believe his handling of the matter was within the broad discretion invested in the trial courts and we should affirm. *Brewer* v. *State*, 269 Ark. 185, 599 S.W.2d 141 (1980).

---

[1] The trial court instructed as follows: Ladies and Gentlemen, whether or not this man took a polygraph test, what its results were is not admissible into evidence. It doesn't have anything to do with this trial. You're the searchers of the truth, here, and what you find to be the truth is what it's going to be.

TOM GLAZE, Justice, dissenting. In a prior decision, this court, in misstating the holding in *Johnson* v. *Florida*, 166 So. 2d 798 (Fla. Dist. Ct. App. 1964), said that any reference to a polygraph test, in the absence of an agreement or other justifiable circumstances, would constitute error. *Van Cleave* v. *State*, 268 Ark. 514, 598 S.W.2d 65 (1980). That misstated rule was again mentioned and applied in *Roleson* v. *State*, 272 Ark. 346, 614 S.W.2d 659 (1981). Today, the court corrects that case law by adopting the following rule set out in the *Johnson* decision:

> [W]hile neither the results of a lie detector examination nor testimony which indirectly or inferentially apprises a jury of the results of a lie detector examination is admissible into evidence, the mere fact that the jury is apprised that a lie detector test was taken is not necessarily prejudicial *if no inference as to the result is raised or if any references that might be raised as to the result are not prejudicial.* (Emphasis added.)

Although the majority, in correcting this court's earlier decisions, acknowledges that the mere reference to a polygraph test is not error, it then proceeds to reverse this case for that very reason.

Appellant's trial strategy was to show that his nephew, Frank Boyles, was the trigger man. Boyles was a witness for the state and gave a first-hand account of the shooting. Boyles had made some inconsistent statements about his participation with the appellant in burglarizing a house and stealing some guns. Appellant hoped to focus on the inconsistencies of Boyles's statements to the police to impeach his credibility.

In keeping with this objective, appellant called Detective Sergeant J. C. Rider as a witness. Appellant posed questions regarding whether Boyles participated in burglarizing a house and stealing some guns, including the weapon used later to shoot the murder victim, Stella Martin. Rider mentioned the words "polygraph test" two times during appellant's examination. The first pertinent part of that colloquy is as follows:

> Q And I'm talking about April the thirteenth, you're sitting down — I mean, he's still in Oklahoma and you went to talk to him. And on this page, he had still told you that Jerry was the [one] who broke in and got everything?

A   Yes, sir. And I have to admit that's probably a mistake on my part for letting that pass, as*I did, because earlier in the day, myself and Sergeant Boyd had interviewed him in the jail before taking him to OSBI headquarters for a polygraph. He had —

MR. MARCHEWSKI: Your Honor, can we approach the bench.

(AT BARSIDE, OUT OF JURY'S HEARING:)

MR. MARCHEWSKI:   I'm going to make a motion for a mistrial at this time. *The officer has referred and implied that they took Frankie Boyles to the OSBI headquarters for a polygraph examination. Judge, I think that that is inadmissible.* He doesn't have to say what it's about. That is an indication that a jury cannot escape that presumption. That's why the police believe him, is that somehow that's related to a polygraph examination. I move for a mistrial and ask that the Court grant it. (Emphasis added.)

As can be seen, even appellant's counsel was aware Officer Rider had made no direct or indirect mention of any results of a polygraph test given Boyles. Instead, he was of the expressed impression that he was entitled to a mistrial merely because Rider "referred and implied that the [officers] took Frank Boyles to the OSBI headquarters for a polygraph examination." In denying appellant's mistrial motion, the judge clearly stated that all Rider had said was that Boyles had been taken to a polygraph test. The judge also admonished appellant's counsel that he could not call the polygraph examiner as a witness, saying "I don't think we're getting into that . . . I don't think it's got a thing in the world to do with this case . . . it's not relevant evidence and shouldn't be entered into."

Besides having failed to show Rider mentioned or implied what the results were of a polygraph given Boyles, appellant also showed no prejudice that could have arisen from Rider's testimony. Appellant argued that the jury would presume that the police believed Boyles because of the polygraph examination. However, the jury did not hear the results of the polygraph examination but did hear evidence of Boyles's inconsistent

statements. As previously noted, appellant's questions of Rider directly bore on whether Boyles had participated in a burglary in which the murder weapon was stolen. Boyles testified at trial, as did appellant, on this very subject. They both admitted to having participated in the burglary. Significantly, Boyles also admitted he had given a prior false statement that he never knew where the murder weapon came from. Appellant simply fails to show that the trial judge erred, or if error did occur, that it was prejudicial. This court has said that it will not reverse for errors that do not affect the essential fairness of a trial. *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984), *cert. denied*, 470 U.S. 1085 (1985).

The second passage or colloquy between Rider and appellant's counsel where Rider mentioned the words "polygraph test" is as follows:

Q   You know, he's — you know, talking about being able to get them guns and stuff and saying that he might be able to get some guns and stuff like that. Then he came back and told me how'd he'd gotten those guns and then he got into all that stuff, so, then he was always talkin' about going to Cushing, over to Pat's. Now, is that right?

A   Well, that's what he told me at the time, sir, but it's like I told you I made a mistake probably in letting that slide, letting that statement slide and pursuing it any further.

Q   You mean not confronting him and telling him that he's lying to you right then?

A   Yes, sir, I let that slide. But he had told me the truth earlier in the day before he ever took the polygraph test about the burglary.

Q   You mean he took a polygraph test about the burglary?

A   No. He took a polygraph test about the homicide.

MR. MARSCHEWSKI:   Your Honor —

THE COURT:   Mr. Marschewski, you're asking him about these things.

MR. MARSCHEWSKI:   I didn't ask him about that,

Your Honor.

THE COURT: You should have guided him more in his testimony, Mr. Marschewski. Ladies and Gentlemen, whether or not this man took a polygraph test, what its results were is not admissible into evidence. It doesn't have anything to do with this trial. You're the searchers of the truth, here, and what you find to be the truth is what it's going to be.

As can be readily seen, appellant's counsel again delved into the conflicting statements Boyles had given concerning the burglary and theft of the guns, including the murder weapon, and Rider again referred to the fact that Boyles had taken a polygraph test. Once more, Rider made no mention of the test results, but even more importantly, this subject was thoroughly covered by counsel for appellant in his trial cross-examination of Boyles, and the jury knew full well that Boyles had previously lied when saying he had not participated in the theft of the guns. It is also noteworthy to mention that Boyles's credibility was in issue from the outset of his testimony at trial because he admitted early on that he was serving time for the crime of robbery by force.

The trial judge did an excellent job in evaluating and ruling on the testimony given by Rider, Boyles and the appellant. He was correct in ruling that the polygraph test results were not mentioned nor were they admissible. And, in these circumstances where the appellant was able to impeach Boyles's credibility by showing his inconsistent statements about prior criminal activity, the mention of the words "polygraph test" was not prejudicial. The trial judge further admonished the jury to this effect.

The majority, in my view, is seriously wrong in finding the trial court erred.

HAYS AND TURNER, JJ, join this dissent.