ALDERMAN, Judge.
The appellant, State of Florida, brings this interlocutory appeal from an order of the trial court in a criminal case granting in part appellee’s motion to suppress statements. In turn the appellee-cross-appel-lant, the defendant below, has cross assigned as error the trial court's denial of part of his motion to suppress statements and his request for immunity.
The trial court’s findings of fact and conclusions of law were fully set out in the *1034 order which is the subject of this appeal. We thank the trial judge for this assistance. A clear understanding of the issues involved may be obtained from the text of the order which is set out below:
“This cause came on to be heard on motion of defendant Hostzclaw to suppress statements of defendant. The Court heard the testimony of the witnesses, received evidence presented by the parties and briefs of the parties and reserved ruling to enter this written order.
The statements sought to be suppressed are:
(a) All statements or testimony given by the defendant, Wesley Anthony Hostz-claw, to the Palm Beach County Grand Jury investigating the alleged homicide of Patrolman John D. Kennedy. Upon information and belief it is alleged that the defendant testified to the Grand Jury on three separate occasions during the period of September 15, 1975 to November 6, 1975.
(b) All written, oral, transcribed or tape recorded statements given by the defendant, Wesley Anthony Hostzclaw, to agents of the Palm Beach County Sheriff’s Office, Delray Beach Police Department, West Palm Beach Police Department and Office of the State Attorney for the Fifteenth Judicial Circuit, including but not limited to a tape recorded statement taken by the chief investigator of the State Attorney’s Office on September 29, 1975, during the Grand Jury investigation above described.
From the very beginning, starting with the January 30, 1975 statement, Hostz-claw freely and voluntarily implicated, in varying degrees, Simpson but carefully and consistently to every statement, including the statement given to A. H. Gold while under hypnosis, concealed his own implication as a principal in the murder of Officer Kennedy. The first statement on January 30, 1975, when he first implicated Simpson, was given freely and voluntarily without any threats, promises or coercion. Thereafter, after he knew Hunt had made a statement, he freely and voluntarily changed his story concerning the events of that fatal evening to more clearly implicate Simpson but still carefully withholding the admission of the facts that would incriminate himself as an aider and abettor. He accepted the promises and assistance of the police officers in his involvement in two robberies but he had implicated Simpson before such promises and assistance were given and after the promises made in exchange for his co-operation he merely furnished more details as to the involvement of Simpson but did not in the statement of February 3, 1975, or either statement made by him on February 8, 1975, make any admission of facts which would incriminate himself. Indeed, he does not even seek to suppress the statements given on January 30th, February 3rd or either statement given on February 8th.
When he first appeared to testify before the Grand Jury he was advised very strongly by Judge Hurley (then Assistant State Attorney) that he should have the advice of counsel and after counsel was appointed for him he told counsel he did not want to testify before the Grand Jury because Hunt was not going to testify and he did not want to implicate himself. Thereupon, after he learned Hunt was going to testify, a conference was had with Assistant State Attorney Bryant Sims and he freely and voluntarily in the presence of his attorney told Mr. Sims the substance of what his testimony before the Grand Jury would be. What he told Mr. Sims was a summary of what he had previously told Mr. A. H. Gold and Sgt. Sheridan on February 8th. He did not tell Mr. Sims any facts or make any admissions that would incriminate himself as a principal in the murder. After hearing this summary of what Hostzclaw intended to testify to, if he did testify, Mr. Sims stated that the most Hostzclaw could be indicted for would be accessory after the fact and that he (Sims) would “guarantee” he (Hostzclaw) would not go to jail for that. In this conference, Hostzclaw wilfully and carefully concealed facts which he did not intend to testify to *1035 before the Grand Jury, but which he later admitted to Officer Mariano and Ralph Wiles, Jr., investigator for the State Attorney.
Ingram v. Prescott, 111 Fla. 320, 149 So. 369, is authority for the proposition that a prosecuting attorney may grant contractual immunity to a defendant “if he shall honestly and fairly make a full disclosure of the crime.” (Underscore added.) In the instant case, it is apparent that the defendant never intended to make a “full disclosure” of the crime but intended to hide from the Grand Jury facts which may show his own involvement as an aider and abettor. Under these circumstances he is estopped to claim contractual immunity and the defendant who otherwise testified before the Grand Jury voluntarily did so at his own risk. Therefore, the motion to suppress the statements of the defendant before the Grand Jury on September 17, 1975 and September 22, 1975, should be denied.
On September 22, 1975, Hostzclaw testified that the gun Simpson used to shoot Kennedy was an automatic. It became evident that Hostzclaw was mistaken or lying because of other information that the bullet that killed Kennedy was fired from a revolver. Hostzclaw demonstrated that he knew the difference between a revolver and an automatic. Thereupon, it was arranged for Hostzclaw to be given a polygraph test. The results of this test, even though Hostzclaw freely and voluntarily participated in the test, are not admissible and must be suppressed. State v. Cunningham, 324 So.2d 173.
While Hostzclaw freely and voluntarily discussed the involvement of Simpson in the murder of Kennedy, he did not tell even his own attorney of his own involvement but, rather, he consistently sought to withhold any self-incriminating admissions by lying to the police officers and to the Grand Jury. It was not until after the polygraph tests that he made admissions to Mr. Ralph T. Wiles, Jr. (investigator for the State Attorney’s office), which would implicate himself as an aider and abettor. The admissions to Wiles and Sheridan on September 29, 1975, were made at a time when Hostzclaw was to some degree under the influence of drugs and were procured as a result of abusive and psychological coercion. They were not freely and voluntarily given and the statement and tape recording thereof given to Mr. Wiles and Sgt. Sheridan on September 29, 1975, must be suppressed.
The statements given to the officers on the canal bank on September 29, 1975, and the Grand Jury statement of September 30,1975, are fruits of the tainted tree (the statement given to Mr. Wiles and Sgt. Sheridan on September 29, 1975) and likewise must be suppressed. Wong Sun v. U. S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.
It is upon consideration
ORDERED AND ADJUDGED that the motion to suppress the statements of the defendant Hostzclaw before the Grand Jury on September 17,1975, and September 22, 1975 be and the same is hereby denied, and that the motion to suppress the statements given to the polygraph operator, the statements and the tape recording thereof given to Mr. Wiles and Sgt. Sheridan on September 29,1975, the statements made to the officers following that statement on September 29, 1975, and the statement given to the Grand Jury on September 30, 1975, is hereby granted and the same are hereby suppressed.”
The State first contends that the trial court erred in suppressing the statements given to Mr. Wiles and Sgt. Sheridan on September 29, 1975. The trial judge found that these statements were made at a time when appellee was to some degree under the influence of drugs and were procured “as a result of abusive and psychological coercion” and therefore were not freely and voluntarily given. We have reviewed the record and although we might have reached a contrary conclusion if we were sitting as the finder of fact, as an appellate court we cannot say that the trial judge was wrong in the factual determinations *1036 that he made. The same is true of the statement given to the officers on the canal bank on September 29, 1975. This portion of the order is affirmed.
The State next contends that even if the statements given on September 29,1975 were inadmissible, appellee’s testimony before the grand jury on September 30, 1975 was not “fruit of the poisonous tree”, but was the direct result of appellee’s free and voluntary desire to purge his prior false testimony before the grand jury. We agree and reverse this portion of the order. A review of the transcript of appellee’s appearance before the grand jury on September 30, 1975 shows that he was voluntarily appearing under a waiver of immunity. His testimony clearly shows that he appeared because he wanted to clear up the false testimony that he had given previously-
The last point raised by the State relates to the trial court’s suppression of appellee’s admissions to the polygraph operator. The State contends that admissions made to the polygraph operator after the polygraph examination had been concluded are not the results of the examination and are admissible just as any free and voluntary admission. The trial court suppressed all statements made by the defendant to the polygraph operator on the authority of State v. Cunningham, 324 So.2d 173 (Fla.3d DCA 1975). The Third District in Cunningham held that the trial judge properly suppressed any information obtained during the giving of the polygraph test by the operator. Judge Pearson dissented on the basis of Johnson v. State, 166 So.2d 798 (Fla.2d DCA 1964). To the extent that Cunningham and Johnson, supra, are in conflict, we agree with Judge Pearson. We see no difference between an incriminating statement made to a polygraph operator after completion of the polygraph examination and an incriminating statement freely and voluntarily made to any other officer. That portion of the trial court’s order suppressing defendant’s voluntary admissions made to the polygraph operator after completion of the polygraph examination is reversed.
We have considered the points raised by appellee on his cross-appeal and find them to be without merit. The record supports the trial judge’s denial of appellee’s motion to suppress his statements before the grand jury on September 17, 1975 and September 22, 1975. The record also supports the trial court’s finding that appellee was not granted contractual immunity because he never intended to make a full disclosure of the crime but wilfully concealed facts which he did not intend to testify to before the grand jury. Ingram v. Prescott, 111 Fla. 320, 149 So. 369 (1933).
The order which is the subject of this appeal is affirmed in part, reversed in part and the case remanded for further proceedings consistent with this opinion.
MAGER, C. J., and WALDEN, J., concur.