400 So.2d 850 (1981)
Edward R. SHADE, Appellant,
v.
STATE of Florida, Appellee.
No. VV-324.
District Court of Appeal of Florida, First District.
July 10, 1981.
*851 Michael Allen, Public Defender and Carl S. McGinnes, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Carolyn Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
JOANOS, Judge.
Appellant, Edward R. Shade, appeals from a judgment of conviction for involuntary sexual battery, attempted armed robbery, trespass of a structure while armed with a dangerous weapon and trespass of a structure. He was given a life sentence for sexual battery and ten years for attempted armed robbery, to run consecutively. He was also given five years on each of the other two convictions to run concurrently with each other and with the life sentence. Appellant raises three issues on appeal. We affirm the trial court in all respects except in the adjudication and sentencing of the defendant for trespass of a structure.
Appellant first argues that the trial court should be reversed for denying his motion to suppress certain statements made by appellant to an investigator, Branson Fisher. We cannot agree.
In DeCastro v. State, 359 So.2d 551, 552 (Fla. 3rd DCA 1978), the proper review to be afforded a trial judge's ruling on a motion to suppress is set out as follows:
In a motion to suppress evidence the trial judge is the trier of both fact and law. His conclusions come to the appellate court clothed with a presumption of correctness, and in testing the accuracy of his conclusions, the court should interpret the evidence and all reasonable inferences capable of being drawn therefrom in the light most favorable to sustain them. (citations omitted.)
Applying this principle to the evidence presented below we find that there was sufficient evidence to support the trial judge's determination that the "statement was freely and voluntarily made."
Nine days following his arrest, appellant submitted to a polygraph examination. After the polygraph examination had concluded, he was told he had "failed" the examination. Officer Fisher, the examiner, then proceeded to question appellant without polygraph equipment and appellant's responses, including incriminating statements, were taped without his knowledge. It is his statements made after the polygraph that appellant seeks to suppress. Appellant asserts that the statements were inadmissible because the waiver form that he signed prior to the taking of the polygraph examination did not extend to the post-examination interview. The form signed by the appellant, however, reflects that he was *852 advised fully of his constitutional rights.[1] Further, Officer Fisher testified that he read appellant his rights before the polygraph test was given and that appellant stated that he understood his rights. Despite the form's heading, the portion of the form dealing with appellant's rights included references to an "interview" or "questioning" as well as the polygraph examination. In Burch v. State, 343 So.2d 831 (Fla. 1977), the Florida Supreme Court upheld the voluntariness of a confession given after the defendant was advised that he had "failed" a pretended polygraph given with the defendant's consent. That court noted that, as in this case, the defendant was advised of his rights before taking the polygraph, but he never requested an attorney nor did he ask for interrogation to cease. Burch, supra at page 832. The Florida Supreme Court in Hostzclaw v. State, 351 So.2d 970 (Fla. 1977) approving State v. Hostzclaw, 351 So.2d 1033 (Fla. 4th DCA 1976), also upheld a post-polygraph confession stating that there was no difference between an incriminating statement made to a polygraph operator after completion of the polygraph examination and an incriminating statement knowingly and voluntarily made to any other officer.
Appellant cites Johnson v. State, 166 So.2d 798 (Fla. 2d DCA 1964) and argues that the statements were not "knowingly and voluntarily" made. In Johnson, that court upheld admission of a post-polygraph confession but stated that "if the defendant is forced to submit to the examination or if the methods of examination are such as to constitute actual or psychological coercion the resulting confession may well be found involuntary." To illustrate the point, the Johnson court cited People v. Sims, 395 Ill. 69, 69 N.E.2d 336 (1946), where the court suppressed statements made by a 17 year old girl while the polygraph equipment was still attached to her but not operating. In that case there was no evidence that the girl knew the equipment was not operational and there was evidence by State witnesses that she objected to the use of the lie detector. Although the evidence in this case is somewhat vague as to whether appellant requested the test, there is evidence that he was advised that he could not be *853 forced to submit to the test. In addition, he never indicated any resistance or reluctance to testing. Further, the Sims case is rendered inapplicable in that in the instant situation, appellant knew he was not still being tested when he gave his statement. The examining officer testified that he explained the operation of the equipment to appellant and that the equipment was disconnected before the confession was given.
Appellant next argues that the lower court was in error in not suppressing certain physical evidence, a pair of jeans, and a "prayer cloth." We cannot agree.
On the morning of the alleged criminal acts, the victim stated that her assailant was wearing faded jeans that were bleached in spots, sort of "tie-dyed." One of the investigating officers also discovered a 4" X 4" piece of cloth near the torn screen where admission into the victim's mobile home was apparently obtained. The cloth had a prayer or religious term on it and was totally dry although most of the area was wet from rain that fell earlier in the evening. The next day, a law enforcement officer saw a pair of tie-dyed jeans hanging on the clothesline in the front yard of the home where appellant's mother and siblings lived and where appellant was staying. The officer then went and got the victim, drove her past appellant's home and asked her if she recognized anything on the clothesline. She positively identified the jeans as those worn by the rapist. The officer then took the victim to her home and returned to the Shade house. At the Shade home the officer seized the jeans which appellant's mother identified as belonging to appellant's brother. The testimony was conflicting at that point as to whether or not appellant's mother gave consent to enter the home, but in any event, the officer then searched the room of appellant's brother and seized a wallet containing a "prayer cloth" identical to the one found at the scene of the crime. At the suppression hearing regarding the seized jeans and prayer cloth, the testimony reflected that the seized items belonged to appellant's brother. There was also some confusion in the evidence as to whether appellant was living in the home or just there on a temporary stay. The trial judge denied the motion on the ground that appellant had no standing to challenge seizure of those items and, therefore, made no determination as to whether or not consent had been obtained.
In light of recent opinions of the United States Supreme Court,[2] the trial court's determination that appellant lacked "standing" to challenge the search and seizure of the jeans and prayer cloth is probably outdated. Regardless of the terminology, the proper inquiry was whether the evidence reflected a legitimate expectation of privacy concerning the area searched to obtain either the jeans or the prayer cloth. Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). As to the jeans, it is clear that appellant did not have a reasonable expectation of privacy, as they were hanging on a clothesline in plain view from the street. See Rawlings v. Kentucky, id; Hornblower v. State, 351 So.2d 716, 718 n. 1 (Fla. 1977); State v. Detlefson, 335 So.2d 371 (Fla. 1st DCA 1976).
Seizure of the wallet, which contained appellant's brother's prayer cloth, presents a more difficult question, primarily because the scope of the privacy interest needs to be ascertained. According to the Supreme Court in Rawlings, the court should consider whether, in the course of the challenged search and seizure, "government officials violated any legitimate expectation of privacy held by petitioner." (emphasis supplied) The State has argued that appellant had no legitimate expectation of privacy in the contents of the wallet (because the wallet belonged to appellant's brother), or in the bedroom where the wallet was seized (because of testimony that appellant did not sleep in that bedroom.) To limit the scope of the inquiry to appellant's expectation of privacy in the wallet or the bedroom would ignore the fact that the officers had to intrude into the home itself in order to get *854 to the bedroom and wallet. If appellant had a reasonable expectation that government officials would not enter the home absent the consent of another household member,[3] then the trial court should not have foreclosed his challenge to the seizure of the wallet.
There was sufficient evidence in this case to establish appellant's privacy interest in the house where he had stayed the past week, even assuming that appellant's stay was temporary. See Brady v. State, 394 So.2d 1073, 1981 FLW 535 (Fla. 4th DCA 1981). The trial court's failure to exclude the wallet and its contents must be considered to be harmless error, however, in light of the strong evidence of guilt, not the least of which were appellant's inculpatory statements which were properly admitted.
In appellant's third and last point on appeal, he argues the principles of double jeopardy require that appellant's judgment and sentence on the charge of trespass of a structure must be vacated as that offense is a lesser offense of trespass of a structure while armed with a dangerous weapon. The State has conceded that the sentence in this regard may be improper and we hold that it is. See, e.g. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Where double jeopardy applies, the conviction as well as the sentence for the lesser offense must be vacated. State v. Pinder, 375 So.2d 836 (Fla. 1979).
Accordingly, the judgment of the trial court is AFFIRMED except that the appellant's judgment of guilt and sentence for trespass of a structure is REVERSED and VACATED.
ROBERT P. SMITH, C.J., and LARRY G. SMITH, J., concur.
NOTES
[1] The full text of the signed consent was as follows:

STATE ATTORNEY'S OFFICE THIRD JUDICIAL CIRCUIT
CONSENT FOR POLYGRAPH EXAMINATION
I, Edward R. Shade, DO HEREBY FREELY AND VOLUNTARILY SUBMIT TO A POLYGRAPH EXAMINATION TO BE ADMINISTERED BY BRANSON R. FISHER, JR., WHO HAS IDENTIFIED HIMSELF TO ME AS A POLYGRAPH EXAMINER, INVESTIGATOR FOR THE STATE ATTORNEY'S OFFICE, THIRD JUDICIAL CIRCUIT, LIVE OAK, FLORIDA.
I HAVE BEEN FULLY AND FAIRLY ADVISED THAT:
1. THIS EXAMINATION OR INTERVIEW CONCERNS rape complaint by Edith Williams.
2. I HAVE THE RIGHT TO REMAIN SILENT AND CANNOT BE FORCED OR COERCED IN ANY WAY OR MANNER TO SUBMIT TO THIS TEST OR BE REQUIRED TO ANSWER ANY QUESTIONS.
3. THAT ANYTHING I DO OR SAY CAN BE USED IN EVIDENCE AGAINST ME IN A COURT OF LAW.
4. THAT I HAVE A RIGHT TO AN ATTORNEY, EITHER RETAINED BY ME OR APPOINTED BY THE COURT IF I CANNOT AFFORD TO HIRE AN ATTORNEY, AND THAT I HAVE A RIGHT TO TALK TO SUCH ATTORNEY BEFORE SAYING ANYTHING OR TAKING THIS EXAMINATION, AND, FURTHER, THAT I HAVE A RIGHT TO HAVE THAT ATTORNEY PRESENT WITH ME DURING THIS EXAMINATION OR ANY INTERVIEW.
5. IF I DECIDE TO ANSWER QUESTIONS NOW AND WAIVE MY RIGHTS TO FIRST TALK WITH AN ATTORNEY OR HAVE AN ATTORNEY PRESENT WITH ME DURING QUESTIONING, I WILL HAVE THE RIGHT TO STOP ANSWERING AT ANY TIME UNTIL I TALK TO A LAWYER.
BEING FULLY AWARE OF AN UNDERSTANDING WHAT MY RIGHTS ARE, I KNOWINGLY AND VOLUNTARILY WAIVE MY FOREGOING RIGHTS AND HEREBY CONSENT AND AGREE TO THIS EXAMINATION. ABSOLUTELY NO THREATS, PROMISES OR INDUCEMENTS OF ANY KIND HAVE BEEN MADE OR OFFERED TO ME.
 SIGNED /s/ Edward Shade
WITNESS: /s/ Branson Fisher, Jr.
WITNESS: _____________________________
DATE: 11-21-79
TIME: 10:31 AM
PLACE: SAO LIVE OAK

[2] Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).
[3] The trial judge expressly declined to rule on the issue of consent, and since there is conflicting testimony which would require weighing the credibility of witnesses, the circuit court is the more appropriate forum for determination of that issue. For this reason, our analysis of the legitimacy of the search assumes that no consent was given.