411 So.2d 1034 (1982)
Richard Douglas DANIELS, Appellant,
v.
STATE of Florida, Appellee.
No. AE-440.
District Court of Appeal of Florida, First District.
April 1, 1982.
*1035 Michael E. Allen, Public Defender, P. Douglas Brinkmeyer, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Raymond L. Marky, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Appellant plead nolo contendere to a charge of possession of controlled substances, reserving his right to appeal the propriety of the trial court's denial of his motion to suppress. We affirm.[1]
On February 5, 1981, the Clay County Sheriff's Office received information that two men had been seen transferring a large amount of marijuana from an automobile into a mobile home. Because the informant said the marijuana "would only be there a little while," the police made no effort to obtain a search warrant. Instead, they proceeded to the identified residence, arriving sometime in the early afternoon. In the front yard, the police found an automobile which matched the informant's description of the vehicle from which the marijuana had been unloaded. On the floor in the back of the vehicle were some leaves which appeared to be marijuana. Because there had been "trouble" at the trailer before, some officers went behind the trailer while others approached the front door. Those who had gone to the rear of the trailer looked through a set of sliding glass doors and saw appellant and one Hawkins (who is not a party to this appeal) sleeping in a room which had been added onto the trailer. The room was the living area and one of the men was asleep on the couch, the other on the floor. Officers also observed a small bag of marijuana on one of the chairs in the room. A knock on the glass door woke Mr. Daniels who then woke Mr. Hawkins. When Mr. Hawkins opened the glass door, the officers could smell marijuana.
Mr. Hawkins initially refused the officers permission to search the trailer, but subsequently relented. Upon searching the trailer, the police discovered, in addition to the small baggie of marijuana in the living room, two large bags of marijuana in the back bedroom.
At the hearing on appellant's motion to suppress, appellant's evidence showed that the trailer was owned by Mr. Hawkins' sister. She had given the keys to her mother along with the authority to rent the trailer to others. On the morning of the day of the search, Mr. Hawkins and the appellant went to the mother's house. They said they had been drinking and needed a place to rest and clean up. She gave them the keys to the trailer and some linens. There they slept until the police arrived that afternoon. Hawkins had been to the trailer only once before, when his sister was living there. Appellant had never been to the trailer. Mrs. Hawkins testified she did not know Daniels very well and would not have given him the key to the trailer had he been alone.
*1036 While the trailer was furnished and clothing was found in the closet, none of these effects belonged to either appellant or Hawkins. Appellant had an overnight bag of clothing in the front room. Mr. Hawkins also had some clothing in that room. It does not appear that either man had any possessions in any other part of the trailer.
Appellant testified that he anticipated spending only that night in the trailer, he had not been to any part of the trailer except the front room, and, when the police requested permission to search, he told them they would have to ask Hawkins because he was "just visiting."
The prosecutor argued only the standing issue. The defense argued that the consent was invalid and that appellant had standing. The trial judge ruled that appellant had standing as to the front room, but lacked standing as to the back room. The trial judge granted the motion to suppress as to the baggie of marijuana found in the front room, but denied the motion as to the large bags of marijuana found in the back bedroom. Implicit in the partial grant of the motion to suppress is the determination that Hawkins' consent to search was not voluntary.
Initially, we would observe that the questions of standing and the legality of the search have merged. The proper inquiry is whether it may be said that the Fourth Amendment rights of the individual challenging the search have been violated.[2] To answer this question a court must look to the "totality of the circumstances"[3] in order to determine (1) if the defendant had a subjective expectation of privacy in the area searched, and (2) if that expectation is one which society is prepared to recognize as reasonable.[4]
Here, the trial judge answered these questions in the affirmative as to the search in the front room of the trailer, but in the negative as to the search of the back room. The trial court was correct.
Mr. Daniels was a guest. He intended to leave the next morning. On this basis, the case is distinguishable from Brady v. State.[5] There, the appellant had left her own apartment and, with all her belongings, moved into the apartment of a friend. She had previously stayed in the friend's apartment and, since she had no money, expected to remain there for some time. Though the search occurred only a few hours after she moved in, the Fourth District Court of Appeals held that she had a reasonable expectation of privacy in the premises which she was, in effect, sharing with her friend.
Similarly, this case is distinguishable from this court's decision in Shade v. State.[6] There, the evidence showed appellant, Shade, was a temporary resident in his family's home.[7] Evidence was seized from his brother's bedroom, and Shade sought to challenge the voluntariness of his mother's consent. This court said:
To limit the scope of inquiry to appellant's expectation of privacy in the wallet or the bedroom would ignore the fact that the officers had to intrude into the home itself in order to get to the bedroom and wallet. If appellant had a reasonable expectation that the government officials would not enter the home absent the consent of another household member, then the trial court should not have foreclosed his challenge to the seizure of the wallet.
At 853-854.
Shade stands for the proposition that an individual's expectation of privacy may be greater when he is a guest in the home of *1037 his family than when he is a guest in the home of those to whom he is not related.[8]
The evidence in the instant case established that Mr. Daniels was, in effect, the guest of a guest. At the time of the search, he had been in the trailer only a few hours. He testified he had been in no part of the trailer except the front room, that he did not even "know" that the trailer had a back bedroom, although he assumed that it did. When police sought his permission to search the trailer, he deferred to Mr. Hawkins because he was "just visiting." Under the circumstances, we conclude that the search of the back bedroom and the seizure of the marijuana therein did not violate Mr. Daniels' Fourth Amendment rights.[9]
Accordingly, the order appealed from is AFFIRMED.
SHAW and THOMPSON, JJ., concur.
ERVIN, J., dissents with opinion.
ERVIN, Judge, dissenting.
I must respectfully disagree with the majority's rule of bifurcated standing, and its curious proposition "that an individual's expectation of privacy may be greater when he is a guest in the home of his family, than when he is a guest in the home of those to whom he is not related." Ante at 1036-1037. This is certainly not the test for standing as recognized by the United States Supreme Court in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Although Rakas disapproved of certain language used by the Court in its prior opinion in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), extending standing to any person legitimately on the premises, it did not disapprove the ultimate holding in Jones as applied to the facts there involved, showing  similar to those here  that Jones was an overnight guest in an apartment leased by a friend, who had given him a key to the apartment; that Jones had apparently been in the house only a few hours when the search occurred, and that he had maintained his home elsewhere. 439 U.S. at 141, 99 S.Ct. at 429, 58 L.Ed.2d at 399.
The only substantial distinction between Jones and the instant case is that at the time of the search, Jones was the sole occupant of the premises because the lessee was then away for a period of several days. This difference does not, however, require the conclusion that Daniels had no standing to object to the search of the rear bedroom, because, under the circumstances, Daniels would be considered by Rakas to have a sufficient possessory interest in all areas within the trailer. Rakas concluded its analysis of Jones with the observations: "Jones... stands for the unremarkable proposition that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." 439 U.S. at 142, 99 S.Ct. at 429, 58 L.Ed.2d at 400. Although Rakas eschewed "arcane distinctions developed in property and tort law between guests, licensees, invitees, ...," 439 U.S. at 144, 99 S.Ct. at 431, 58 L.Ed.2d at 401, it nevertheless observed that "the Court has not altogether abandoned use of property concepts in determining the presence or absence of the privacy interests protected by that Amendment." 439 U.S. 143, 99 S.Ct. at 430, 58 L.Ed.2d at 401, n. 12. One means by which one may assert a legitimate expectation of privacy in the premises searched is to demonstrate that he lawfully possesses or controls property. Id. And a concomitant right to lawful possession is the right to exclude others. Id. The Court continued that an overnight house guest, such as Jones, lawfully on the premises with the consent of the owner, possesses a sufficient possessory interest to exclude all others, with the exception of the owner. 439 U.S. at 149, 99 S.Ct. at 433, 58 L.Ed.2d at 405. On the other hand, a casual visitor present on the premises for a very short period of time preceding a search, or a passenger in an automobile, lacks a substantial interest in other areas of the place searched to object. 439 U.S. at 142, 149, 99 S.Ct. at 429, 433, 58 L.Ed.2d at 400, 405.
*1038 In the case at bar, Daniels and his friend, Hawkins, were lawfully in possession of the trailer at the time of the search since the person who had control of it had given a key to Hawkins with the understanding that both Hawkins and Daniels would remain in it overnight. The fact that Daniels did not occupy the specific area searched is immaterial to the question whether he can be considered, under the circumstances, to be in lawful possession of the entire premises searched. He and his friend clearly had the right to occupy any portion of the trailer since there were no restrictions made by the person who relinquished control of it upon either's use of it. Moreover, the back bedroom was not at the time of the search occupied by anyone else. Under the circumstances, Daniels must be considered to have possessed a legitimate expectation of privacy in all areas searched by reason of his right to exclude all persons except Hawkins. Cf. Brady v. State, 394 So.2d 1073 (Fla. 4th DCA 1981).
Accordingly, I would reverse the order denying the motion to suppress the contents taken from the back bedroom of the mobile home.
NOTES
[1] Appellant's public defender initially filed a brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Upon examining the record, as we are obliged to do in such cases, and determining that there did exist an arguable issue of law, we requested supplemental briefs.
[2] Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).
[3] Rawlings v. Kentucky.
[4] Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
[5] 394 So.2d 1073 (Fla. 4th DCA 1981).
[6] 400 So.2d 850 (Fla. 1st DCA 1981).
[7] There was a dispute as to whether he was living in the home or just staying there temporarily.
[8] In this regard, see, Silva v. State, 344 So.2d 559 (Fla. 1977).
[9] See also, Inchaustegui v. State, 392 So.2d 319 (Fla. 4th DCA 1980).