440 So.2d 13 (1983)
Troy FLANAGAN, a/K/a Steven L. Anthony, Appellant,
v.
STATE of Florida, Appellee.
No. AQ-260.
District Court of Appeal of Florida, First District.
October 19, 1983.
Rehearing Denied December 2, 1983.
Michael Allen, Public Defender, Gwendolyn Spivey, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., Kathryn L. Sands, Asst. Atty. Gen., for appellee.
MILLS, Judge.
In this criminal appeal, Flanagan contends that the trial court erred in denying his motion to suppress a quantity of cocaine that was found in his possession. We disagree and affirm.
Officer W.B. Butler, a deputy with the Jacksonville Sheriff's Office, was on routine patrol on 21 March 1982 when he was flagged down by an informant around 1:00 a.m. The informant told him that a man named Troy Flanagan had just robbed a nearby convenience store and that he knew where Flanagan was hiding out. Officer Butler then put plain clothes over his uniform and was driven by the informant to a trailer where Flanagan was allegedly in hiding.
*14 When they arrived a man named Taylor came out of the trailer and began conversing with Officer Butler. Taylor told him that he had the authority either to grant or to deny entry into the trailer. He further told Officer Butler that the trailer contained illegal drugs and that he would not allow him to go inside if he was going to conduct a search. After several minutes of negotiating, Officer Butler agreed that he would not search the trailer and that he would arrest no one other than Flanagan.
Taylor then led Officer Butler, along with a backup officer who had arrived on the scene, inside the trailer and up to the bathroom door. Taylor tapped on the door, opened it, and began a conversation with Flanagan who was inside. Eventually, the door was opened wide enough so that Officer Butler could see inside. What he saw was Flanagan, holding a syringe, preparing to inject himself with what appeared to be illegal drugs. Officer Butler arrested Flanagan and charged him with violating Section 893.13(1)(e), Florida Statutes (1981). The substance in the syringe was later analyzed and determined to be cocaine.
Some time later, Flanagan was also charged with the armed robbery of the convenience store. That count, however, was severed and is not pertinent to this appeal.
Flanagan filed a motion to suppress the cocaine, contending that it was the fruit of an illegal search and seizure. In its order denying the motion, the trial court found that Flanagan had no standing to challenge the search and that even if he did, the cocaine was not illegally seized. Thereafter, Flanagan entered a plea of nolo contendere to the charge of possession of cocaine, reserving his right to appeal the denial of his motion to suppress. This timely appeal followed.
In reviewing the trial court's order, the first question which must be answered is whether Flanagan had a reasonable expectation of privacy in the area where the cocaine was seized. If he did not, then the question of the legality of the search becomes irrelevant. State v. Hutchinson, 404 So.2d 361 (Fla. 2d DCA 1981).
The evidence adduced at the hearing shows that Flanagan was an overnight guest in this trailer. At the time Officer Butler entered the trailer, Flanagan was in the bathroom with the door closed. Under these circumstances, we hold that Flanagan did have a reasonable expectation of privacy, and thus he may challenge the legality of the search. Daniels v. State, 411 So.2d 1034 (Fla. 1st DCA 1982).
Flanagan urges that Officer Butler did not have probable cause to enter the trailer and that the cocaine must be suppressed as the product of an illegal arrest. We disagree. The issue is not whether Officer Butler had probable cause to enter the trailer, but whether there was consent for him to do so. If there was consent, then it does not matter that there was no probable cause. United States v. Ellis, 547 F.2d 863 (5th Cir.1977).
It is also urged that the consent given by Taylor was a "limited consent" and that Officer Butler went beyond the bounds of that consent when he seized the cocaine. More specifically, Flanagan contends that, as a condition to his entering the trailer, Officer Butler agreed not to seize any drugs. We find that argument is based on a misreading of the record. Officer Butler agreed not to search the trailer for drugs and not to arrest anyone other than Flanagan; he never agreed that he would not seize any drugs from Flanagan should he find them in his possession. Even if he had so agreed, such an agreement would be unenforceable as a matter of public policy. Law enforcement officers should not be allowed simply to ignore a crime that is being committed in front of their very eyes.
In order to determine whether there was valid consent in this case, it must first be determined whether Taylor consented in fact or whether he merely submitted to the apparent authority of Officer Butler. The evidence here is sufficient to show that Taylor did, in fact, consent. Taylor negotiated with Officer Butler for several minutes before allowing him to enter the trailer. If Taylor had merely submitted to the *15 apparent authority of Officer Butler, it seems more likely that Taylor would simply have let him inside with no questions asked.
Next, it must be determined whether Taylor actually had the authority to consent. There was no evidence that Taylor owned the trailer and none that he even resided there. Flanagan testified at the suppression hearing that there were three people who resided at the trailer, and Taylor was not one of those named. Officer Butler never attempted to determine who the owners or lessees of the trailer were, nor did he ever contact Taylor after the date of the arrest. Taylor merely told Officer Butler that he had authority either to grant or to deny entry into the trailer. On this record, we cannot say that there was proof of any actual authority by Taylor.
However, the evidence is sufficient to show that Taylor had the apparent authority to consent. Taylor came out of the trailer, told Officer Butler that it was up to him to grant or to deny entry into the trailer, and negotiated the terms of entry with him for several minutes. Under such circumstances, it was reasonable for Officer Butler to believe that Taylor did in fact have the authority to consent.
Finally, it must be determined whether consent which is grounded on the apparent authority of a third party is valid. Florida has not yet addressed this question, but other jurisdictions have done so.
In Nix v. State, 621 P.2d 1347 (Alaska 1981), it was held that a house guest had the apparent authority to allow an undercover policeman to enter a dwelling and that such authority was sufficient to show a valid consent. Likewise, in People v. Adams, 53 N.Y.2d 1, 422 N.E.2d 537, 439 N.Y.S.2d 877 (1981), it was held that a search was valid when consent to search the defendant's apartment was obtained from his girlfriend even though she did not reside with him. For a contrary view, see State v. Carsey, 664 P.2d 1085 (Or. 1983), where it was held that a police officer's reasonable, good faith belief that the defendant's grandmother had authority to consent to a search of the defendant's bedroom was insufficient to validate the search. Because it is more consistent with the purpose underlying the exclusionary rule, we adopt the reasoning of Nix and Adams.
In United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974), it was held:
The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim... . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable search and seizures... .
This purpose would not be served by suppressing evidence obtained in cases, like this one, where law enforcement officers reasonably believe that they are acting lawfully.
The trial court was correct in denying Flanagan's motion to suppress.
AFFIRMED.
SHIVERS and ZEHMER, JJ., concur.