523 So.2d 718 (1988)
Ronald H. PINYAN, Appellant,
v.
STATE of Florida, Appellee.
No. BR-210.
District Court of Appeal of Florida, First District.
April 7, 1988.
*719 Michael E. Allen, Public Defender and W.C. McClain, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Elizabeth Masters, Asst. Atty. Gen., Tallahassee, for appellee.
JOANOS, Judge.
Appellant Ronald H. Pinyan appeals an order denying his motion to suppress evidence obtained by means of a warrantless search. The question for our consideration concerns the validity of the consent given by a third party to enter Pinyan's premises. We reverse.
On July 23, 1986, Deputy Maacks, who is assigned to the narcotics division of the Escambia County Sheriff's Office, was told by a confidential informant that appellant was growing marijuana in a shed in the rear of his residence. The residence is located in a semi-rural area. The informant described the house, but did not provide the deputy with appellant's name. The deputy drove to appellant's residence. He discovered that appellant's backyard and a neighbor's backyard are enclosed by a common fence. Two horses were inside the fenced area.
The deputy did not approach appellant's residence. Instead, he went to a residence on the southwest side of appellant's house. There, the deputy spoke with Mr. Bates, another neighbor. Mr. Bates's property does not directly adjoin appellant's land. Mr. Bates advised the deputy that he [Bates] had permission to keep his horses in appellant's fenced backyard and, if necessary, to show the horses there for sale. Mr. Bates then led the deputy from his yard through a gate in the rear of appellant's fence into the fenced enclosure encompassing appellant's backyard and that of his next-door neighbor.
The deputy observed a shed constructed of opaque corrugated panels placed abutting the brickwork of appellant's home. The shed door was secured with a lock. From a distance of approximately two feet, the deputy bent down two or three feet so that he could look through the small gaps left by the ends of the corrugated material. In this manner, he was able to see marijuana plants growing inside the shed. He did not detect an odor of marijuana. Thereafter, the deputy spoke with appellant's next-door neighbor, who stated that "as far as she knew [Bates] had full reign of the land."
The deputy did not knock on appellant's door, and made no effort to contact appellant prior to obtaining a search warrant. Based on a statement prepared by the deputy, a warrant was issued authorizing a search of appellant's property. Upon execution *720 of the warrant, marijuana plants and a small quantity of marijuana were seized. Appellant moved to suppress the evidence on the ground that Deputy Maacks had no legal right to be in the backyard where he stood to observe the marijuana plants. The state's position was that Mr. Bates had authority to consent to the entry, since he had permission to keep his horses there.
After a hearing, the trial court denied the motion to suppress, finding first that there was valid consent to authorize the warrantless entry, and second, if the consent were tainted, the same result would have been obtained through the next-door neighbor who had some joint control over the premises. The state stipulated that the suppression issue was dispositive, and appellant entered a plea of nolo contendere with express reservation of the right to appeal the denial of the motion to suppress.
While the major purpose of the exclusionary rule is the deterrence of unreasonable searches and seizures, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), it serves other purposes as well. For example, the rule serves to preserve judicial integrity, "namely, that the courts not become `accomplices in the willful disobedience of a Constitution they are sworn to uphold.'" W. LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 1.1(f) (2d ed. 1987), citing Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). See also Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In addition, the rule has as its goal the preservation of trust in government, by assuring potential victims of unlawful government conduct that the government would not profit from lawless behavior. LaFave, Search and Seizure, § 1.1(f).
A two-prong test has been established for determining whether government conduct constitutes an intrusion upon an individual's reasonable expectation of privacy: (1) an individual must, by his conduct, demonstrate an actual subjective expectation of privacy; and (2) society must be willing to recognize that expectation as reasonable. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Riley v. State, 511 So.2d 282 (Fla. 1987), cert. granted, ___ U.S. ___, 108 S.Ct. 1011, 98 L.Ed.2d 977 (1988).
It is well settled that the Fourth Amendment protection of the home extends to the curtilage of a residence, with the extent of the curtilage being determined on the basis of the use to which the area is put and how that use relates to family life. United States v. Dunn, 480 U.S. ___, ___, 107 S.Ct. 1134, 1138, 94 L.Ed.2d 326, 334 (1987); Riley v. State, 511 So.2d at 285. In Riley, the court reviewed the high degree of Fourth Amendment protection afforded to curtilage, noting that "[s]tate and federal courts have long recognized that the curtilage concept extends to residential backyards and outbuildings located within close vicinity of the residence." 511 So.2d at 286. Accord State v. Morsman, 394 So.2d 408, 409 (Fla.), cert. denied, 452 U.S. 930, 101 S.Ct. 3066, 69 L.Ed.2d 431 (1981)  no expectation of privacy with respect to front porch, but backyard is private because passersby cannot generally view the area; Huffer v. State, 344 So.2d 1332 (Fla. 2d DCA 1977)  hothouse located ten to forty feet from residence was within curtilage of residence, and deserving of constitutional protection; Fixel v. Wainwright, 492 F.2d 480 (5th Cir.1974)  backyard of four-unit apartment building sufficiently removed and private in character to afford reasonable expectation of privacy. In other words, "the protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home both physically and psychologically `where privacy expectations are most heightened.'" Riley v. State, 511 So.2d at 285, citing California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986). Therefore, the central focus of the inquiry should be whether the area harbors the intimate activities associated with family life. United States v. Dunn, 480 U.S. at ___, 107 S.Ct. at 1138, 94 L.Ed.2d at 334.
In Dunn, the Supreme Court set forth four factors to consider in curtilage determinations: (1) the proximity of the area claimed to be curtilage to the home, (2) *721 whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation. 94 L.Ed.2d at 334-335. In part, the reasonableness of the expectation of privacy logically depends upon the degree to which the locale, object, or conduct is viewable by a member of the public without visual aids. For example, in United States v. Whaley, 779 F.2d 585 (11th Cir.1986), cert. denied, ___ U.S. ___, 107 S.Ct. 931, 93 L.Ed.2d 982 (1987), the court held it was unreasonable to expect privacy with respect to activities that could be viewed with the naked eye through a lighted, uncurtained basement window. And in State v. Clarke, 242 So.2d 791 (Fla. 4th DCA), cert. denied, 246 So.2d 112 (Fla. 1971), the court found no reasonable expectation of privacy with respect to conduct within easy view of a fire escape which was generally accessible.
Application of the four Dunn factors to the instant case demonstrates first, that the proximity factor is present, since the corrugated shed in question was flush against the brickwork of appellant's home. Second, the enclosure factor is present, since the shed which was the object of the warrantless search was within a fenced enclosure surrounding appellant's backyard and the backyard of his next door neighbor. Third  the nature of the uses factor  is more difficult to determine in the context of this case. The shed at issue was apparently used as a personal greenhouse. Its proximity to the home and its location abutting the home and within a fenced enclosure, would, in most circumstances, justify treating the area as one which "harbors those intimate activities associated with domestic life and the privacies of the home," Dunn, 480 U.S. at ___, fn. 4, 107 S.Ct. at 1139, fn. 4., 94 L.Ed.2d at 335, fn. 4, since gardening is often a family activity. Fourth, the protection from observation factor, is clearly present in this case. The shed was built against the brickwork of appellant's house, the door to the shed was locked, and the walls of the shed were an opaque corrugated material, so anything within was not visible to a casual observer. Indeed, there is no suggestion in the record before this court that appellant's immediate neighbors knew what was inside the shed.
Therefore, were it not for the horse pasture character of appellant's backyard, he could assert a reasonable expectation of privacy interest in the shed, based upon the curtilage concept. It is this factor of the common fence and Mr. Bates's right of access to the fenced area in order to care for and show his horses, that raises the consent issue in this case.
The validity of third party consent to search premises is tested by the degree of dominion and control exercised by the third party over the searched premises. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Lara v. State, 464 So.2d 1173 (Fla. 1985); Ferguson v. State, 417 So.2d 631 (Fla. 1982); Silva v. State, 344 So.2d 559 (Fla. 1977). In Ferguson, the court found "[t]he test for a valid third-party consent to a warrantless search is whether the third party has joint control of the premises." 417 So.2d at 634. See also Silva v. State, 344 So.2d at 563.
Furthermore, a joint occupant or one sharing dominion and control over the premises, may provide valid consent only if the other party is not present. Id., at 562; United States v. Matlock; Padron v. State, 328 So.2d 216 (Fla. 4th DCA), cert. denied, 339 So.2d 1172 (Fla. 1976).
Professor LaFave suggests that in determining the validity of consent under the "apparent authority" doctrine, courts should require first, that the police belief in the authority of the consenting party must be reasonable, which "does not mean that the police may proceed without inquiry in ambiguous circumstances or always accept at face value the consenting party's apparent assumption that he has authority to allow the contemplated search." Second, "the police must be required to make reasonable inquiries when they find themselves in ambiguous circumstances." LaFave, Search and Seizure, § 8.3(g), at 266-267.
In Salamy v. State, 509 So.2d 1201 (Fla. 1st DCA 1987), this court rejected the *722 state's argument that consent was valid due to the officer's "good faith" or reasonable belief that the landlord could consent to the search of a house. Salamy was forced off the property at gunpoint by the landlord, leaving his personal effects and vehicles behind. He reported the incident immediately. The search occurred within two days of the unusual eviction. This court held that "the virtually undisputed facts [did] not support a finding that the officer's belief that the owner had authority to consent to the search of appellant's premises was reasonable." 509 So.2d at 1204.
A different result obtained in Flanagan v. State, 440 So.2d 13 (Fla. 1st DCA 1983), pet. for review denied, 450 So.2d 486 (Fla. 1984). In Flanagan, a confidential informant told an officer that appellant had robbed a convenience store. The confidential informant drove the officer, who had dressed in plain clothes, to a trailer where appellant was allegedly hiding. Taylor came out of the trailer and told the officer he had authority to grant or deny entry into the trailer. He agreed to allow the officer to enter the trailer for the limited purpose of arresting Flanagan, but on the express condition that the officer would not conduct a search. The officer found Flanagan in the bathroom holding a syringe, apparently preparing to inject himself. The issue was whether the officer had consent to enter the trailer. While there was no proof in the record that Taylor had actual authority to consent to the officer's entry, the record reflected that Taylor negotiated with the officer on the condition of entry before allowing him to enter. In the circumstances, the court found the purpose of the exclusionary rule to deter future unlawful conduct would not be served by invalidating the apparent authority to consent.
The record in this case does not reflect that Mr. Bates enjoyed the joint dominion and control over appellant's property as contemplated in Matlock, Lara, Ferguson, and Silva. It is clear that Mr. Bates's use of the property was limited to the care of his horses. It did not include anything beyond that. By the same token, the record does not reflect that the deputy was entitled to the reasonable belief in Mr. Bates's apparent authority as that apparent authority was found to exist in Flanagan. First, Mr. Bates was not an adjacent neighbor. Second, Mr. Bates advised the deputy that he had permission to go on the property to care for his horses, and to show them for sale. There was nothing to reflect that Mr. Bates was allowed to go up to the shed, stoop down and look through the cracks or allow someone else to do that. Nor do we find that Mr. Bates's statement in this regard constitutes the type of negotiated consent which was found to exist in Flanagan.
In summary, we conclude that the area at issue in this case constituted curtilage, which was, by its nature, entitled to Fourth Amendment protection. We are unwilling to find that by virtue of a neighborly accommodation, appellant abandoned his reasonable expectation of privacy in the area adjoining his residence, nor do we find that Mr. Bates demonstrated that degree of apparent authority which would entitle the deputy to a reasonable belief in his [Bates's] authority to consent.
Accordingly, the trial court's order denying appellant's motion to suppress evidence is reversed, and the case is remanded for proceedings consistent with this opinion.
ERVIN and BARFIELD, JJ., concur.